IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SISKIN STEEL & SUPPLY COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:12-CV-105 JUDGE KIM R. GIBSON |
| HIGHLAND NORTH, LLC, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER OF THE COURT

### I.    SYNOPSIS

This matter comes before the Court on Defendant Highland North, LLC's ("Highland North") "Motion for Transfer of Venue" (Doc. No. 2), Plaintiff Siskin Steel & Supply Company, Inc.'s ("Siskin") "Motion to Remand and/or Alternatively to Abstain." (Doc. No. 6), and Highland North's "Motion to Substitute Party" (Doc. No. 11). For the reasons that follow, the Court will **DENY** Plaintiff's motion to remand, **GRANT** Defendant's motion to transfer, and refrain from judgment on Defendant's motion to substitute party.

### II.    JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 1452. Venue is proper under 28 U.S.C. § 1391.

### III.    BACKGROUND

This case comes before the Court upon Highland North's Notice of Removal (Doc. No. 1), filed on May 17, 2012.  The basis of the removal from the Court of Common Pleas of

1

Cambria County, Pennsylvania was "pursuant to 28 U.S.C. §§ 1334 and 1452 and Federal Rule of Bankruptcy Procedure 9027." (Doc. No. 1 at 1). A chronology of the substantive and procedural history leading up to the commencement of this case and removal to this Court will provide the factual basis upon which the instant motions are determined.  In addition to the parties' filings, this Court held an oral argument on all pending motions on December 13, 2012. A transcript of this hearing was produced, and several key facts emerged during the proceeding, of which the Court will take proper judicial notice under Federal Rule of Evidence 201.[1]

The dispute arises out of a wind farm project ("the Project") that was undertaken by Highland North around the year 2010.  Highland North is the Owner of the leasehold interest in Adams Township, Cambria County, Pennsylvania, where it chose to construct the Highland North Wind Farm.  (See Doc. No. 3 at 7).  Highland North retained Nordex USA, Inc. ("Nordex") as the primary contractor to supply the wind turbines for the Project.  (Id.).  Nordex then subcontracted a portion of its work to SIAG Aerisyn, LLC ("SIAG"), including the "fabrication of wind turbines for use on the Project."  (Id.).  SIAG then entered into purchase order contracts with Siskin, whereby Siskin supplied the steel plates used in the fabrication of the wind turbines.  (Id.).   The dispute from which the instant case emerges is the alleged nonpayment by SIAG to Siskin of a portion of the contract price for the supply of steel plates. (See Doc. No. 7 at 2).  Siskin alleges that the amount owed to it is $983,046.89.  (Id.).

To collect this amount, Siskin first initiated a lawsuit on June 6, 2011 in the Hamilton County Chancery Court in Tennessee ("Tennessee lawsuit") alleging breach of contract among

---

[1] Federal Rule of Evidence 201(c)-(d) provides that, "[t]he court (1) may take judicial notice on its own," and "may take judicial notice at any stage of the proceeding." FED. R. EVID. 201(c), (d).

other claims.  (See Doc. No. 1-4 at 2-17).[2]  On October 28, 2011, Siskin then initiated a

mechanic's lien claim (the "lien claim") in the Court of Common Pleas of Cambria County,

Pennsylvania against Highland North (Case No. 2011-4320).  (See Doc. No. 1-2 at 18).  In its

claim, Siskin identified Highland North as the Owner subject to the lien, which was based on an

unpaid balance by the subcontractor SIAG of the above stated amount.  (Id. at 18-20).  After this,

SIAG appeared on November 30, 2011 in the lien claim case by filing a "Petition for Court's

Determination of the Amount of Security Necessary to Discharge Lien Claim," in order to satisfy

the lien.  (See Doc. No. 1-6 at 2).  Before an Order on this petition was issued, however, Nordex

"appeared on behalf of Highland North (pursuant to a contractual obligation) ... and presented a

Letter of Credit to the Court in response to Siskin's Lien claim." (Doc. No. 2 at 2).  The Court of

Common Pleas entered an order on December 21, 2011 accepting Nordex's letter of credit as

security for the lien, discharged the lien, and denied SIAG's earlier petition as moot.  (Id.).[3]

Thus, any determination in favor of Siskin on the basis of the mechanic's lien claim would be

drawn from Nordex's letter of credit posted in the case.

In order to collect on the lien[4], Siskin next filed a "Complaint to Obtain Judgment on a

Mechanic's Lien Claim," (the "lien complaint") on January 30, 2012 in the Court of Common

Pleas of Cambria County, Pennsylvania.  (See Doc. No. 1-2 at 4).  This complaint re-alleged the

contractual basis for its dispute with SIAG and the Owner-Contractor-Subcontractor relationship

necessary for collection on a mechanic's lien under Pennsylvania law.  (Id.).  Thereafter, on

---

[2] This case has been stayed pending the Chapter 11 bankruptcy proceeding of SIAG. This Court took judicial notice under Fed. R. Evid. 201 of the stay order of the Chancery Court of Hamilton County, Tennessee filed August 21, 2012.

[3] As Plaintiff's memorandum in support of its motion alleges, "the Letter of Credit provides the fund from which any judgment obtained by Siskin will be satisfied." (Doc. No. 7 at 2).

[4] Under Pennsylvania's Mechanic's Lien Law of 193, 49 P.S. § 1101 et seq., the Claimant must first timely file a statement of mechanic's lien against the owner of land, and then must file a complaint on the mechanic's lien in order to collect on the lien.

March 21, 2012, Highland North attempted to join SIAG as a third party defendant to the mechanic's lien complaint, "arguing that SIAG should be held solely liable for the monies alleged to be due and owing to Siskin." (Doc. No. 3 at 6). In its "Praecipe for Writ of Summons to Join Additional Defendant," Highland North also filed a complaint against SIAG alleging it is the entity solely liable to Siskin because "the Owner [Highland North] is entitled to reimbursement from Siag due to Siag's failure to issue payment to Plaintiff." (Doc. 1-3 at 12). Siskin responded by objecting to Highland North's joinder action, arguing that it is "[i]n violation of Rule 1657 of the Pennsylvania Rules of Civil Procedure, which prohibits joinder of an additional cause of action in a mechanic's lien action." (Doc. No. 7 at 2-3). Hearing on the joinder dispute before the Cambria County Court of Common Pleas was set for July 20, 2012. (Id.). Before the hearing could take place, however, Highland North filed a Notice of Removal in this Court and then submitted its Motion to Transfer Venue to the Eastern District of Tennessee.

During this same period, SIAG initiated a bankruptcy proceeding when it filed a Chapter 11 voluntary petition with the United States Bankruptcy Court for the Eastern District of Tennessee on April 2, 2012. (See CM/ECF Docket for Bankruptcy Petition Case No. 1:12-bk-11705). Due to this proceeding, the Tennessee lawsuit between Siskin and SIAG was stayed on August 21, 2012.[5] With regard to the SIAG bankruptcy proceeding, SIAG submitted with its petition a list of its "20 Largest Creditors," of which Siskin was included as having an unsecured claim amount of $998,658.56. (See id., Doc. No. 1-5 at 6). SIAG identified this amount as "disputed." (Id.). Neither Highland North nor Nordex was included on this list of creditors, despite Nordex having provided a Letter of Credit as security for the Pennsylvania lawsuit in the event judgment was entered in Siskin's favor on the mechanic's lien claim. SIAG subsequently

---

[5] See supra, n.2.

4

filed its Bankruptcy Schedules A through H with Siskin again appearing on "Schedule F –
Creditors Holding Unsecured Nonpriority Claims," for the amount of $996,658.5, which was
against identified as "disputed." (See id., Doc. 38 at 20). Additionally, the Bankruptcy Court set
a deadline of July 30, 2012 for creditors to submit proofs of claims against SIAG. (See id., Doc.
No. 15). Siskin filed a proof of claim in the amount of $997,658.56 on May 17, 2012, along with
accompanying documentation of itemized statements of running accounts allegedly evidencing
the unpaid portions of SIAG's account. (See id., Claim 21-1).

Nordex also filed a proof of claim on July 30, 2012 in the amount of $983,046.89, and
listed it as unliquidated in both secured and unsecured amounts.[6] (See id., Claim 46-1). To
support its claim, Nordex submitted two exhibits: Exhibit A was a copy of the "Purchase
Contract" between Nordex and SIAG that was signed and entered into force on December 1,
2010. (See id., Claim 46-1 Part 2 at 13). Exhibit A also included the "First Amendment" to the
"Purchase Contract" that went into effect on April 1, 2011. (See id., Claim 46-1 Part 2 at 33).
Exhibit B was a copy of the settlement agreement signed on February 3, 2012 by Nordex and
SIAG Schaaf Industrie AG (SIAG's parent company), through which SIAG "assumed and was
assigned … the obligation to keep the Property [i.e., Wind Farm Property] free and clear of
liens." (See id., Claim 46-1 at 3). In its proof of claim, Nordex explains how it appeared on
behalf of Highland North in the lien claim action as it was "obligated to do [so] under the Supply
Agreement, and presented a letter of credit to the Court," for which the Settlement Agreement
between Nordex and SIAG would ensure that SIAG "was to replace Nordex's letter of credit
with its own letter of credit making the Debtor, and not Nordex, liable for any liens against the
property." (Id.). Nordex then alleged in its proof of claim that SIAG failed to fulfill the terms of

---

[6] Nordex listed the claim as being unliquidated for both categories of "amount of secured claim" and
"amount unsecured." (CM/ECF Docket for Bankruptcy Petition # 1:12-bk-11705: Claim 46-1).

the Settlement Agreement and did not replace Nordex's letter of credit.[7]  (Id.).  In addition to this

proof of claim, Nordex filed an objection to Siskin's proof of claim on November 28, 2012,

asking the Bankruptcy Court to disallow the claim.  (See id., Doc. No. 169).  The Bankruptcy

Court has scheduled a hearing on this matter for January 10, 2013.  (Id.).  To date, there has been

no confirmation of a reorganization plan in SIAG's bankruptcy proceeding, and thus remains in

the pre-confirmation stage.  (See id.).

## IV.  DISCUSSION

Present in the parties' motions are several related issues.  With regard to Defendant

Highland North's motion, the Court must determine whether the case should be transferred to the

Eastern District of Tennessee.  Defendant argues that transfer is proper pursuant to 28 U.S.C. §

1412 because this case is "related to" the SIAG bankruptcy proceeding.  Determining whether to

transfer first requires a determination of whether federal court subject matter jurisdiction exists

in this case.  If it does not exist, then the Court must remand the case to state court.  If it does

exist, then the Court will consider Plaintiff's motion to remand on the basis of abstention.

Plaintiff argues that mandatory abstention applies in this case, and in the alternative, the Court

should exercise permissive abstention and remand the case.  Relatedly, if the Court finds remand

proper, Siskin argues that it is entitled to recover attorneys' fees and costs pursuant to 28 U.S.C.

§1447(c) for bad faith removal by Defendant.  If, however, the Court determines that abstention

is not appropriate in this case, it must then consider whether transfer is justified as alleged by

Defendant.  The Court will consider each argument in turn.

---

[7] In presenting the Settlement Agreement as to SIAG's obligation with regards to replacing the letter of credit, Nordex, in effect, proffered evidence of contractual "indemnification from the Debtor for any and all amounts Nordex has paid or will pay to satisfy any liens against the property."  (See CM/ECF Docket for Bankruptcy Petition Case No. 1:12-bk-11705, Claim 46-1 at 3).

6

### A. Federal Jurisdiction, Remand, and Transfer of Venue

#### 1. "Related To" Subject Matter Jurisdiction

As a threshold matter to determining whether transfer or remand is proper, the Court first must determine whether this case is "related to" the SIAG bankruptcy proceeding presently before the Eastern District of Tennessee. As being the basis upon which Defendant removed this case to federal court, and as serving as the rationale as to why this Court can transfer the case to the Eastern District of Tennessee, determining whether there is "related to" jurisdiction will also determine Plaintiff's motion to remand for lack of subject matter jurisdiction. Highland North argues that transfer of venue is proper pursuant to 28 U.S.C. § 1412 under the basis of "related to" jurisdiction. (Doc. No. 3 at 6). Specifically, it contends that the lien complaint is "related to" SIAG's pending bankruptcy proceeding in the Eastern District of Tennessee. (Id. at 7). Plaintiff disagrees and argues that this court lacks appropriate subject matter jurisdiction because the instant case is not "related to" to the SIAG bankruptcy. (Doc. No. 7 at 5-9). The gravamen of the parties' disagreement of whether "related to" jurisdiction exists is the nature of the relationship between all parties involved in this dispute.

Section 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. To determine whether a case or proceeding is one that is "under title 11," courts look to venue rules for instruction. See *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747 (E.D. Pa. 2003). More specifically, 28 U.S.C. 1334(b) gives district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. 1334(b); See *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261 (3d Cir. 1991) (explaining that determining bankruptcy jurisdiction

requires determining "if this action falls within one of the other three categories," but it "not [being] necessary, though, to fit the proceeding into one of these particular categories since they 'operate conjunctively to define the scope of jurisdiction.'" (quoting *Matter of Wood*, 825 F.2d 90, 93 (5ᵗʰ Cir. 1987))). (Id. at 264). Likewise, the Federal Rules of Civil Procedure allow for removal of such suits "related to" pending bankruptcy proceedings—the basis upon which Defendant removed the instant case to this Court. See 28 U.S.C. 1452(a)-(b). When determining whether a case is "related to" a bankruptcy proceeding, it has been noted that "[a] 'related to' case does not invoke a substantive right under the bankruptcy statute and exists outside of bankruptcy, but its outcome could effect [sic] the bankruptcy case." *Steel Workers Pension Trust*, 295 B.R. at 750; see also *In re Guild Gallery Plus, Inc.*, 72 F.3d 1171 (3d Cir. 1996) (finding that a "related to" non-core proceeding does not invoke a substantive right under title 11, but could nonetheless affect the bankruptcy estate).

Here, the issue concerns whether the instant Siskin-Highland North action in Pennsylvania is "related to" the SIAG bankruptcy in Tennessee, such that subject matter jurisdiction exists to allow for transfer of venue to the Eastern District of Tennessee. It has been noted that because of the "uncharted and perilous waters of bankruptcy subject matter jurisdiction," present when "federal courts must consider whether an issue is a related proceeding, the starting point has universally been *Pacor*." *In re Guild & Gallery Plus, Inc.*, 72 F.3d at n.5 (3d Cir. 1996) (referring to *Pacor, Inc., v. Higgins*, 743 F.2d 984 (3d Cir. 1984) (overturned on other grounds)). In *Pacor*, the Plaintiffs sued in Pennsylvania state court to recover on a claim of work-related injuries to Mr. Higgins caused by asbestos exposure. Defendant Pacor supplied the asbestos, but a third party, Johns-Manville, manufactured the asbestos. There was no contractual right of contribution or indemnity that existed between Pacor

8

and Johns-Manville; rather, such a right needed to be separately established in another lawsuit.[8] Prior to the third party manufacturer filing for bankruptcy, it was interpleaded to the Higgins-Pacor suit through a third–party complaint filed by Pacor.[9]   With the bankruptcy proceeding under way, Pacor then attempted to remove and transfer the Higgins-Pacor case from Pennsylvania state court to the Bankruptcy court in New York where the Johns-Manville bankruptcy proceeding was taking place.   The transfer petition was ultimately denied, and the Higgins-Pacor case was remanded to Pennsylvania state court.   The district court's decision to deny transfer and remand was affirmed by the Third Circuit.   See  *Pacor*, 743 F.2d at 986-87. As the Third Circuit instructed, "for subject matter jurisdiction to exist … there must be some nexus between the 'related' civil proceeding and the title 11 case."   *Pacor, Inc. v. Higgins*, 743 F.2d at 994.   Determining whether there is a sufficient connection between the instant action and the bankruptcy estate, the Third Circuit has been clear:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* (citations omitted), (italics original).   Thus, the underlying question here is whether the outcome of the Siskin-Highland North action could conceivably have any effect on the administration of the SIAG bankruptcy estate such that it impacts SIAG's rights, liabilities, options, or freedom of action.

---

[8] As such, Pacor could not file any proof of claim or existing right against Johns-Manville in the bankruptcy proceeding prior to confirmation of the Chapter 11 plan.

[9] Ultimately, the cases were severed. See *Pacor*, 743 F.2d.

At this point, an assessment of the relationship between Highland North and Nordex is warranted. As discussed above, Highland North is the Owner of land that hired Nordex to complete the wind farm project. Subcontracting out a portion of the work, Nordex hired SIAG, and SIAG subsequently hired Siskin. Each link in the chain of the contractor-subcontractor relationship is connected by privity of contract: Highland North and Nordex's contract, Nordex and SIAG's purchase contract, and SIAG and Siskin's purchase order contracts. Additionally, in response to satisfying the lien on the property, Nordex stepped into the shoes of Highland North through its supplied letter of credit as accepted by the Cambria County Court of Common Pleas' entry of order dismissing SIAG's petition and discharging the lien. Even further, the Settlement Agreement between Nordex and SIAG specifically indemnified Nordex against SIAG's failure to satisfy the lien. Thus, for purposes of the analysis here, even though the instant case is one styled as being between Siskin and Highland North, in all practicality, it is one between Siskin and Nordex, because as is currently the case, satisfying a potential order in favor of Siskin's complaint to collect on the lien means satisfying it from Nordex's security—the letter of credit. As such, determining whether the Siskin-Highland North mechanic's lien complaint is "related to" the SIAG bankruptcy in essence requires an analysis of the relationship between Siskin and SIAG on the one hand and Nordex and SIAG on the other hand, with Nordex standing in the shoes of Highland North.

Returning to a determination of whether there is any conceivable effect of the instant case on the SIAG bankruptcy, the Supreme Court of the United States noted when endorsing *Pacor*: "[w]e also agree with the court's observation that a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (citing *Pacor*, 743 F.2d). As one court has explained, "[m]ere potential impact upon the debtor's estate is insufficient.

10

Contingent liability will not suffice. The necessity of *future action* to fix the debtor's liability after resolution of the pending lawsuit precludes the exercise of 'related to' jurisdiction." *Steel Workers Pension Trust*, 295 B.R. at 750. More precisely, as the Third Circuit has instructed, "whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit." *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2008). To put it another way, does the resolution of the so-called "related to" proceeding "alter the debtor's rights, liabilities, options, or freedom of action ...?" *Pacor*, 743 F.2d at 994.

In light of this articulation of the boundaries to "related to" jurisdiction, the Third Circuit has also held that when interpreting the "key word ... 'conceivable,'" it should be stressed that "[c]ertainty, or even likelihood is not a requirement." *In re Marcus Hook Development Park, Inc.*, 943 F.2d at 264. The existence of a conceivable effect in the context of contractual agreements has been found "when the right to indemnification is clearly established and accrues upon the filing of the civil action." *Steel Workers Pension Trust*, 295 B.R. at 750. Thus, as one court found, where there existed a "contractual indemnification agreement in the purchase order," between the defendant and the non-party debtor, and that could automatically create liability for the "bankrupt estate if plaintiff prevails," then "related to" jurisdiction exists for the purpose of transfer. *Toth v. Bodyonics, Ltd.*, 2007 WL 792172, \*2 (Civil Action No. 06-1617) (E.D. Pa. 2007).

Applying the *Pacor* test and its progeny here, the Court concludes that determining whether judgment should be entered in favor of Siskin on the mechanic's lien complaint with the lien being satisfied through Nordex's security interest is a question "related to" the SIAG bankruptcy proceeding. Any recovery by Siskin in the mechanic's lien claim would necessarily

reduce Siskin's claim against SIAG in the bankruptcy estate for contribution by the same amount, thus altering the liability of the SIAG bankruptcy estate. In other words, if Siskin were to succeed in its lien claim and draw proceeds from Nordex's letter of credit in an amount less than what it is currently claiming, it could assert the remaining contribution of the total alleged amount in the SIAG bankruptcy, thus altering the total liabilities of the bankruptcy estate.[10]

What is key here is the fact that Siskin has filed a proof of claim against SIAG. Even though SIAG listed Siskin as the largest unsecured creditor on its bankruptcy petition, SIAG's classification of the claim as "disputed" is countered by Siskin's proof of claim, which serves to "supersede any scheduling of that claim," making it *prima facie* evidence of Siskin's status as a creditor. FED. R. BANK. P. § 3003(c). In essence, because this proof of claim seeks to hold SIAG accountable for the same amount based on the same dispute in the mechanic's lien claim, the instant case is one "related to" SIAG's bankruptcy proceeding. Additionally, any recovery by Siskin in the instant case that would draw from Nordex's letter of credit would also impact the handling and administration of the SIAG bankruptcy estate by changing the character of Nordex's indemnification claim against SIAG from contingent and unliquidated to certain and liquidated. Both Siskin's and Nordex's proofs of claims, as they exist pre-confirmation on the SIAG bankruptcy proceeding, evidence the sufficient nexus for "related to" jurisdiction: Siskin's claim is based on its contractual agreement with SIAG as established by the purchase orders, and Nordex's claim is also based on a contractual right to indemnity present in the Settlement Agreement signed prior to both the filing of SIAG's bankruptcy petition and the removal of the instant case to this Court. See *In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009) (confirming that the *Pacor* test requires the conceivability of a direct impact upon the bankruptcy estate); see

---

[10] This is also true of the resolution of the Tennessee state court action between Siskin and SIAG alleging breach of contract. A resolution of that case in favor of Siskin would necessarily reduce Siskin's claim against the bankruptcy estate by the amount recovered in the breach of contract claim.

12

also, *In re American Home Mortg. Holding*, 477 B.R. 517 (D. Del 2012) (noting that the Court in *In re W.R. Grace & Co.*, suggested that "if the third party defendant filed a proof of claim in the debtor's bankruptcy for statutory or contractual indemnification, such that the action's outcome could *conceivably* have a *direct* impact upon the debtor's estate, there is some suggestion that the bankruptcy court may possess 'related to' jurisdiction—at least pre-confirmation."). (Id. at n.62).[11] Thus, under these circumstances, the outcome of the mechanic's lien complaint could conceivably have a direct effect on the SIAG bankruptcy estate.

The Court holds that the instant case is "related to" the SIAG bankruptcy proceeding, and there is proper subject matter jurisdiction pursuant to 28 U.S.C. § 1334, allowing for proper removal pursuant to 28 U.S.C. 1452.

### 2. Abstention and Remand to Pennsylvania State Court

The Court, having determined that there is a sufficient basis for subject matter jurisdiction to be found under "related to" jurisdiction, will now consider whether it should nonetheless refrain from exercising its jurisdiction and abstain from hearing the case as argued by Plaintiff. For the reasons that follow the Court will **DENY** Plaintiff's motion to remand.

Plaintiff's motion first contends that this Court does not have subject matter jurisdiction because the mechanic's lien complaint is not "related to" the SIAG bankruptcy proceeding, and because so this Court should remand the case to Pennsylvania state court. As discussed above, the Court has found sufficient basis for "related to" jurisdiction.[12]   Plaintiff alternatively argues that the Court must exercise mandatory abstention in this case. And if mandatory abstention

---

[11] The Court notes here that it is unnecessary in this case to examine "related to" jurisdiction under the "close nexus" test because the SIAG bankruptcy proceeding remains in the pre-confirmation stage since a chapter 11 plan has yet to be confirmed in the proceeding. (See CM/ECF Docket for Bankruptcy Petition Case No. 1:12-bk-11705). After confirmation, additional steps must be met in order for a court to find "related to" jurisdiction. See *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004).

[12] See *supra*, section IV.A.1.

does not exist, the Court should nonetheless find permissive abstention proper and remand the case to Cambria County Court of Common Pleas. For the following reasons, the Court finds Plaintiff's abstention arguments unpersuasive.

### a. Mandatory Abstention

Plaintiff first asserts that the Court must exercise mandatory abstention in this case pursuant to 28 U.S.C. § 1334(c). This section provides:

> (c) ... (2) Upon a timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United State absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Clarifying the analysis for determining whether mandatory abstention applies, the Third Circuit has instructed:

> Thus, upon a timely motion under § 1334(c)(2), a district court *must* abstain if the following five requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006) (italics original). As indicated by the conjunctive "and" before the final factor, all five factors (plus the timeliness requirement) must be found in order to prescribe mandatory abstention.

A great deal of analysis is not required to find that four of the five elements are likely established upon Plaintiff's making a timely motion to abstain: both the lien claim and lien complaint are based on the Pennsylvania mechanic's lien law; "related to" jurisdiction was established above with regard to the SIAG bankruptcy; the lien claim and lien complaint were

14

commenced in Pennsylvania state court; and there is nothing to suggest that the proceedings cannot be timely adjudicated in Cambria County Court of Common Pleas.

While these factors would seem to favor mandatory abstention in this case, it is the third factor that presents a problem. Plaintiff argues that "at the time the Notice of Removal was filed, the federal courts would not have jurisdiction over the Mechanic's Lien Action but for its purported relation to the Bankruptcy Proceeding." (Doc. No. 7 at 10). Plaintiff's argument assumes that the element of federal courts not having "jurisdiction over the claim but for its relation to a bankruptcy case," be measured at the time of filing of Defendant's notice to remove. The Court disagrees. It is not at the time of notice of removal that is the relevant point in time from which to determine whether there was an alternate basis for jurisdiction other than "related to" bankruptcy jurisdiction. Rather, whether an alternate basis—such as diversity of citizenship or federal question—could have allowed the action to be before federal court is properly measured at the time of commencement of an action. See *In re Passodelis*, 234 B.R. 52 (W.D. Pa. 1999) (finding mandatory abstention proper were "said removed actions could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334 since said actions do not raise a federal question and federal diversity jurisdiction could not be satisfied.") (Id. at 64).

Here, the initial commencement of the mechanic lien claim by Siskin against Highland North in the Court of Common Pleas of Cambria County, Pennsylvania on October 28, 2011, was between two diverse parties—Siskin with its principal place of business in Tennessee and Highland North in New York[13]—and for an amount in controversy over $75,000. 28 U.S.C. § 1332. Similarly, the Pennsylvania state mechanic's lien complaint filed by Siskin against

---

[13] Note that even if Nordex is ultimately substituted for Highland North as the party in interest because of its posting the letter of credit as security for any judgment on the lien complaint, complete diversity of citizenship would still exist because Nordex is a corporation with its principal place of business in Illinois—diverse from Siskin in Tennessee.

Highland North on January 30, 2012 could have also been commenced in federal court on the jurisdictional grounds of diversity of citizenship.[14]   As such, Plaintiff's argument that there existed no alternative basis for federal court subject matter jurisdiction other than "related to" jurisdiction fails on the account that the alternative basis is measured at the time of commencement of the action, and not at the time of filing of notice of removal by Defendant.[15] Thus, Plaintiff falls short of satisfying all necessary factors of the mandatory abstention test. For this reason, mandatory abstention is not warranted, and Plaintiff's motion to remand will be **DENIED** on this basis.

### b.   Permissive Abstention

Plaintiff next argues that in the event the Court does not find mandatory abstention appropriate in this case, it should nonetheless exercise discretionary abstention because it is in the interests of equity, comity, and justice pursuant to 28 U.S.C. § 1334(c)(1). (Doc. No. 7 at 10). For a court to find in favor of permissive abstention in a case related to a bankruptcy proceeding, the following twelve factors first enunciated in *In re Republic Reder's Svc., Inc.* are instructive:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law,

---

[14] Defendant noted this in its notice of removal alleging that "complete diversity in the Lien Claim [and] State Court Action," existed (Doc. No. 1 at 4) (although Defendant may have incorrectly assumed that its joinder of third-party Defendant, SIAG, was permissible. See *infra*, n.15.).

[15] It should also be noted here that in Defendant's response brief (Doc. No. 10) to Plaintiff's motion to remand, Defendant asserts that "[t]he joinder of SIAG as an additional defendant does not affect this Court's jurisdiction." (Id. at 8).  The Court here notes that the issue of joinder of SIAG to this instant action is one that continues to be disputed. Prior to removal to this Court, Defendant attempted to join SIAG and file a third-party complaint against it. In response, Plaintiff objected and the Cambria Court of Common Pleas scheduled a hearing on the matter. Before the hearing could take place, however, Defendant removed the instant action to this Court, and immediately filed its motion to transfer, to which Plaintiff promptly responded with its motion to remand. Because this Court views the issue of the joinder of SIAG as an open question for which this Court has not received further argument from the parties, it treats the instant action as one between two diverse parties, with the issue of joinder being left for the District Court of the Eastern District of Tennessee to determine if the parties so wish to pursue it.

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involved forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in a proceeding of non-debtor parties.

*Geruschat, et al. v. Ernst & Young, LLP (In re Earned Capital Corp.)*, 331 B.R. 208, 220 (Bankr. W.D. Pa. 2005) (finding "considerable latitude in deciding whether to abstain"). Additionally, it has been noted that "courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *In re Earned Capital Corp.*, 331 B.R. at 221.

Here, we find Plaintiff's argument in favor of discretionary abstention unpersuasive. Specifically, it is the view of this Court that efficient administration of the SIAG estate would be best served by having this case heard in federal court and in the same district as which the bankruptcy proceeding is taking place. In relation to the first factor, all related cases involving the same parties will be more efficiently and judiciously handled in the Eastern District of Tennessee where the SIAG bankruptcy proceeding is underway. As for factors two and three, while this case involves Pennsylvania state law, the connections between the parties and underlying dispute is very close. Also, because Pennsylvania's mechanic's lien law is not of an unsettled nature, the federal court sitting in the same district as the bankruptcy proceeding is better situated to adjudicate this case than the federal court in the Western District of Pennsylvania.[16] As to the fourth factor, the Siskin-SIAG action in Tennessee favors having this case moved closer to that jurisdiction rather than remain here. As discussed above, there did

---

[16] The Court also notes that a federal district court sitting outside the state whose law is to be applied is no less qualified than a federal district court sitting within that state.

17

exist an alternative jurisdictional basis in the form of diversity of citizenship, which also weighs against abstaining in this case.

Under the sixth factor, even though this case is merely a non-core "related to" matter, the degree of relatedness to SIAG's bankruptcy is strong because of the close connections of the parties to this dispute, which again weighs against abstention. As discussed below, this case is a non-core matter, and the substance of the actual dispute could be viewed as one not central to the administration of the bankruptcy estate, although the parties involved, including SIAG, dispute the alleged debt, of which remains the largest on the bankruptcy petition. Despite this, this factor would seem to favor abstention in this case, as would the feasibility of severing the mechanic's lien claim from the bankruptcy matters since a collection on the letter of credit—while possibly having a conceivable effect on the administration of the estate—might not be considered actual property of the estate. As for factors nine and ten, neither is viewed to favor abstention because neither will the court's docket be overly burdened, nor will the court engage in speculation as to forum shopping by the Defendant when it has found sufficient legal basis in its arguments for removal and transfer of venue as set forth here. Additionally, the parties' right to a jury trial is not outweighed by the need to abstain because as found above, the Court believes transferring this case to the District Court for the Eastern District of Tennessee will serve as the better means of ensuring this right, while still allowing for closer consolidation of related cases in that district. As to the final factor, the parties involved are putative creditors to the debtor third-party. The Court in *In re Asousa Partnership* found that when there are no non-debtor parties to the proceeding, this factor is neutral in a decision to abstain. *In re Asousa Partnership,* 264 B.R. at 391.

Taking these factors together, at the most there would seem to be two factors out of twelve that would favor permissive abstention with one factor being neutral. With the other nine factors cutting against discretionary abstention, and for the reasons discussed above, it is the view of this Court that permissive abstention is not justified in this case, and as such the Court **DENIES** Plaintiff's motion to remand on this basis.

### c. Attorney's Fees and Costs

Finally, Plaintiff argues that it is entitled to recover its attorney's fees and costs if Defendant's removal action was based on bad faith. See 28 U.S.C. § 1447(c). Because the Court has found removal and transfer to be proper in this case due to the existence of "related to" jurisdiction, and because Plaintiff's motion to remand will not be granted, the Court will **DENY** Plaintiff's request for attorney's fees and costs.

### 3. Transfer of Venue

Having found sufficient subject matter jurisdiction on the basis of this action being "related to" the SIAG bankruptcy proceeding, and finding abstention and remand improper, the Court must lastly determine whether this case should be transferred. Defendant contends that transfer of venue to the Eastern District of Tennessee is proper under 28 U.S.C. § 1412. For the following reasons, the Court finds that there is sufficient basis to transfer the case and will **GRANT** Defendant's motion.

### a.    Interest of Justice and Convenience of Parties

Section 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a). Complementing this, 28 U.S.C. § 1412 warrants that "[a] district court may transfer a case or proceeding under title 11 to a district court for another

19

district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

Having found "related to" jurisdiction to the SIAG bankruptcy proceeding in the Eastern District

of Tennessee, Defendant argues that the relevant transfer factors that are in the "interest of

justice" or for the "convenience of the parties" militate transfer of venue here. (See Doc. No. 3

at 9, 11-13). The moving party bears the "burden of proof that a transfer is warranted," under §

1412 by demonstrating whether another forum is more appropriate and convenient through

several factors, including:

1) the location of the Plaintiff and Defendant;
2) the ease of access to necessary proof;
3) the availability of subpoena power for unwilling witnesses;
4) the expense related to obtaining willing witnesses;
5) the enforceability of any judgment rendered;
6) the ability to receive a fair trial;
7) the state's interest in having local controversies decided within its borders, by those familiar with its law; and,
8) the economics of the estate administration.

*In re Allegheny, Inc.*, 68 B.R. 183, 191 (W.D. Pa. 1986). As has been noted, "section 1412

largely include[s] the same criteria for transfer of cases as section 1404(a)." *In re Emerson*

*Radio Corp.*, 52 F.3d 50, 55 (3d Cir. 1995); see also *Jumara v. State Farm Ins. Co.*, 55 F.3d 873

(finding a non-exhaustive list of private and public interest factors to be used when determining

whether transfer should be made for the convenience of the parties).

The factors in this case favor transfer to the Eastern District of Tennessee. Siskin and

SIAG retain principal places of business in Tennessee, and while Highland North is based in

New York and Nordex in Illinois, the only connection to Pennsylvania is the location of the

project on which this dispute was originally based. While it is true that the mechanic's lien

complaint is based on Pennsylvania law and the ownership of property is in Pennsylvania,

Nordex's substitution of the letter of credit as security for the Pennsylvania property balances

20

this concern.[17] As for ease of access to witnesses and evidence, transfer is favored because most witnesses, documents, records, and counsel (not withstanding the importance of electronic documentation and communications) for Siskin and SIAG would be located in Tennessee. Likewise, maintaining the case in Pennsylvania over Tennessee would seem to raise the overall expense of conducting litigation because obtaining witnesses outside of their location in Tennessee would cost more. It is also more likely to be in the interest of the state of Tennessee than that of Pennsylvania to resolve this controversy because of its significant connection to not only the SIAG bankruptcy proceeding, but also the pending litigation between Siskin and SIAG in Tennessee state court. Additionally, because of the pending bankruptcy proceeding to which this case is related, the factual nexus from which this dispute emerges favors administration of all related matters in Tennessee. Finally, administering the estate would likely be costlier if this action were maintained in Pennsylvania since the majority of the parties, witnesses, and counsel are not located in Pennsylvania. Transferring venue to Tennessee provides a more convenient forum and a more economic use of resources for all parties involved. Taken together, these several factors weigh heavily in favor of transferring venue to the Eastern District of Tennessee, and the Court will **GRANT** Defendant's motion on this basis.

### b. Non-Core, Related-To Proceeding Before the District Court

Defendant lastly argues that if the Court finds transfer of venue to be appropriate in this case, the case should be transferred to the District Court for the Eastern District of Tennessee and not the Bankruptcy Court because it is a "related to" case and is thus a non-core matter. Specifically, Defendant contends that because this case "involves purely state law causes of action for judgment on a mechanics' [sic] lien," and satisfies the "related to" jurisdictional

---

[17] Relatedly, this Court does not find it persuasive that because this case stems from a dispute based on Pennsylvania's mechanic's lien law, that a federal court in Tennessee would be less able to apply Pennsylvania law than a federal court situated in Pennsylvania. See *supra*, n.16 and accompanying text.

21

requirements, it is therefore a non-core matter and will be better served if heard before the district court, rather than the bankruptcy court. (Doc. No. 3 at 9).

As noted above, "[b]ankruptcy court jurisdiction potentially extends to four types of title 11 matters," with "proceedings 'related to' a case under title 11," as being, "referred to as 'non-core' proceedings." *In re Resorts Intern, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004). While bankruptcy judges may "hear noncore proceedings that are otherwise related to a bankruptcy case," they "may not enter final orders or judgments … unless all the parties consent to the bankruptcy judge's entering judgment." *Corestates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 196 (3d Cir. 1999); see also, *Copelin v. Spirico, Inc.*, 182 F.3d 174 (3d Cir. 1999).

Here, this case has been found to be related to the SIAG bankruptcy proceeding, and as such is a non-core matter that seeks a money judgment under Pennsylvania state law. In addition to Defendant not consenting to the bankruptcy judge entering a final order on the matter if the case is transferred to Eastern District of Tennessee, a jury trial also has been demanded. (See Doc. No. 3 at 10). Because it is in the district court's discretion to determine whether to transfer the case to the bankruptcy court or the district court in which the bankruptcy court is located, it is the view of this Court that this "related to," non-core matter would be best adjudicated in the District Court for the Eastern District of Tennessee. See *Corestates Bank, N.A.*, 176 F.3d at 195.

For the foregoing reasons, Defendant's Motion to Transfer Venue to the District Court for the Eastern District of Tennessee is **GRANTED**.

**B. Motion to Substitute Party**

Lastly, Defendant has submitted a motion to "Substitute Real Party in Interest" (Doc. No. 11) seeking to substitute Nordex as the Defendant, effectively replacing Highland North, pursuant to Fed. R. Civ. P. 25(c). Because this motion was filed after the motions and briefings to transfer and remand, and because this Court believes the District Court for the Eastern District of Tennessee would be better situated to determine the motion to substitute party, this Court will refrain from judgment on this motion and defer determination to the District Court in the Eastern District of Tennessee.

## VI.   CONCLUSION

As set forth here, the parties have presented arguments evidencing the involvement of a greater number of actors than are party to this case.  As discussed, the Defendant has demonstrated that there is sufficient nexus to the SIAG bankruptcy to find subject matter jurisdiction under the "related to" bankruptcy rules so as to warrant not only removal to federal court, but also transfer to the Eastern District of Tennessee.  Having considered and denied Plaintiff's arguments with regard to abstention, remand, and attorney's fees and costs, this Court believes all parties would be better suited with the determination of the Pennsylvania mechanic's lien action in the federal district court that sits in the same district as the "related to" bankruptcy proceeding because of the tightly woven parties, issues, and administration of the bankruptcy estate. For these and the foregoing reasons, the Court will **DENY** Plaintiff's Motion to Remand, **GRANT** Defendant's Motion to Transfer, and refrain from judgment on Defendant's Motion to Substitute Party. An appropriate order not inconsistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SISKIN STEEL & SUPPLY COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. 3:12-CV-105 ) JUDGE KIM R. GIBSON ) |
| HIGHLAND NORTH, LLC, | ) ) |
| Defendant. | ) |

## ORDER

**AND NOW**, this 2nd day of January 2013, in accordance with the Memorandum, **IT IS HEREBY ORDERED** that Plaintiff's "Motion to Remand and/or Alternatively to Abstain." (Doc. No. 6) is **DENIED**, Defendant's "Motion for Transfer of Venue" (Doc. No. 2) is **GRANTED**, and Defendant's "Motion to Substitute Party" (Doc. No. 11) is deferred for judgment with all other outstanding issues in this case, which is hereby **TRANSFERRED** to the federal district court for the Eastern District of Tennessee for decision by that Court.

BY THE COURT:

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**

24